JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: 702.629.7900
Facsimile:  702.629.7925
E-mail:     jag@mgalaw.com
            djb@mgalaw.com

*Attorneys for Plaintiff Danielle Armstrong*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIELLE ARMSTRONG, individually, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| WYNDHAM VACATION OWNERSHIP, INC. d/b/a WYNDHAM DESTINATIONS, a foreign corportion; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, | |
| Defendants. | |

**COMPLAINT WITH JURY DEMAND**

Plaintiff DANIELLE ARMSTRONG ("Plaintiff"), by and through her attorneys of record, the law firm MAIER GUTIERREZ & ASSOCIATES, hereby demands a trial by jury and complains and alleges against the above named defendant, WYNDHAM VACATION OWNERSHIP, INC. d/b/a WYNDHAM DESTINATIONS, a foreign corporation ("Defendant" or "Wyndham"); DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, as follows:

**JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION**

1. This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331

1

because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981").

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district, as defendant Wyndham maintains a facility and business operations in this district, employed Plaintiff in this district, and committed the discriminatory acts alleged herein in this district.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. This civil action is brought by Plaintiff pursuant to federal common and statutory law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about March 5, 2020, Plaintiff filed a formal Charge of Discrimination with the Nevada Equal Rights Commission ("NERC"), dual-filed with the Equal Employment Opportunity Commission ("EEOC"). This filing fulfilled Plaintiff's obligation to initiate an administrative claim before filing suit.

6. In the EEOC filing, Plaintiff alleged facts demonstrating that she had been subjected to discrimination based on race and retaliation by Plaintiff's former employer, defendant Wyndham.

7. On or about March 11, 2020, the EEOC provided Plaintiff a "Notice of Right to Sue" letter (*See* **Exhibit 1**) stating that she would have within 90 days of the letter's receipt to file suit.

8. Accordingly, Plaintiff has met all administrative prerequisites to bring this lawsuit.

## PARTIES

9. Plaintiff, DANIELLE ARMSTRONG, is, and at all times pertinent hereto was, a resident of Clark County, Nevada.

10. Upon information and belief, defendant WYNDHAM VACATION OWNERSHIP, INC. d/b/a WYNDHAM DESTINATIONS is, and at all times pertinent hereto was, a foreign corporation authorized to do business in Clark County, Nevada.

11. The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of the Defendants herein designated as DOES I through X and ROE CORPORATIONS I

2

through X, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave of the Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further seek leave to join said Defendant in these proceedings.

## GENERAL ALLEGATIONS

### Defendant Wyndham Hires Plaintiff in 2015

12. On or around May 15, 2015, Wyndham hired Plaintiff, an African-American female, as a full-time bartender/cashier at its Wyndham Grand Desert location in Las Vegas, Nevada (located at 266 E. Harmon Ave., Las Vegas, NV 89169).

13. A dedicated employee, Plaintiff received strong performance reviews from her first manager, Gina Territo.

### Defendant Wyndham Engages in a Pattern of Systemic Discrimination Against Plaintiff

14. On or around June/July 2017, Stacy Pickett ("GM Pickett") became the Food and Beverage General Manager at Wyndham.

15. Shortly thereafter, GM Pickett began singling out Plaintiff and treating her worse than Plaintiff's non-African-American counterparts. This conduct continued on a regular basis through the time of Plaintiff's termination on or about July 26, 2019.

16. For example, in 2017 and 2018, even though Plaintiff had no available vacation time, GM Pickett repeatedly mishandled Plaintiff's requests for FMLA leave, including by attempting to force Plaintiff to sign off on a vacation request form to take FMLA leave, even though signing the form would have put Plaintiff's vacation time into the negative. No other bartender/cashier was subjected to such treatment.

17. Plaintiff subsequently involved Wyndham HR regarding GM Pickett's conduct in mishandling Plaintiff's FMLA leave requests. Wyndham HR instructed GM Pickett that she could not issue Plaintiff a write-up or a point for Plaintiff's use of approved FMLA leave, as evidenced by the matrix that Plaintiff had already shown GM Pickett on Plaintiff's phone.

18. Wyndham HR offered to sort out the problem that GM Pickett created with payroll by reissuing Plaintiff's vacation time to Plaintiff. Plaintiff accepted HR's offer, but Wyndham HR never

1  followed up on the issue.

2  　　　19.　　Additionally, on or around September 2017, after Wyndham GM Pickett received a
3  call from Caucasian Wyndham bartender Scott claiming that Plaintiff had not taken her lunch break
4  on time, GM Pickett denigrated and harassed Plaintiff in front of customers and insisted that Plaintiff
5  take a lunch break, even though Plaintiff indicated to GM Pickett that Plaintiff still needed to close
6  out a couple of her transactions.  Wyndham GM Pickett ignored Plaintiff's duties and summoned
7  Plaintiff into GM Pickett's office, where she proceeded to berate Plaintiff for half an hour, distressing
8  Plaintiff until she was in tears.  GM Pickett informed Plaintiff that she would be giving Plaintiff half
9  a point for attendance if Plaintiff felt she needed to go home for the rest of the day to regroup, even
10 though Plaintiff had already worked six hours or more that day. Again, no other non-African-
11 American bartender/cashier was subjected to such treatment.

12 　　　20.　　On or about September 20, 2017, Plaintiff specifically reached out to Wyndham HR
13 via email to complain about being "treated unfairly in the workplace," but Wyndham did nothing to
14 properly address the issue.

15 　　　21.　　On or about October 2017, Plaintiff had to hear from a co-worker that she had received
16 a letter of recognition, which GM Pickett never acknowledged, even though the recognitions are
17 supposed to be placed on the associate board. When Plaintiff asked GM Pickett about the letter, GM
18 Pickett claimed she never got it.  Then, GM Pickett somehow "found" the letter and posted it on the
19 associate board only after Plaintiff had made it known that Plaintiff knew about the letter.  No other
20 non-African American bartender/cashier was subjected to such treatment.

21 　　　22.　　As the incidents continued, Plaintiff relayed further communications to Wyndham HR
22 seeking meetings, but nobody sufficiently resolved Plaintiff's complaints.

23 　　　23.　　From the Fall of 2017 through the time of Plaintiff's termination in July 2019,
24 Wyndham GM Pickett made it a habit of only pulling the Caucasian employees off the work floor to
25 do "projects," not the minorities such as Plaintiff.  This adversely affected Plaintiff, as many of these
26 "projects" involved tips, and resulted in Plaintiff being left alone to deal with customers.

27 　　　24.　　Wyndham GM Pickett also collaborated closely with and showed favoritism toward
28 Wyndham employee Scott, as GM Pickett told Scott to focus on what Plaintiff was doing, instead of

focusing on his own job duties. GM Pickett told Scott to report to her, via phone, anything that could potentially be used to discipline Plaintiff.

25. Even though Wyndham employee Scott had never bartended before and was trained by Plaintiff in bartending, GM Pickett made Scott solely a bartender (instead of a bartender/cashier), which resulted in Plaintiff receiving significantly less bartending duties and being forced to work in the deli or marketplace. Consequently, Plaintiff received less in tips, as only the bartenders receive tips – not the deli or marketplace workers.

26. Furthermore, GM Pickett regularly allowed Wyndham employee Scott to dress up for bartending duties but refused to include Plaintiff in those same duties.

27. This disparate treatment continued even after Wyndham employee Scott left Wyndham, as Plaintiff was not permitted to dress up for bartending duties through her termination in July 2019.

28. Wyndham GM Pickett also allowed Wyndham employee Scott to miss work even though he was on the schedule; she did not dock his attendance points or reprimand him even when the business as short-staffed. Plaintiff was not allowed such leeway.

29. Wyndham GM Pickett repeatedly contradicted company rules, along with her own arbitrary rules. One example includes GM Pickett giving Plaintiff a Wyndham coat and telling her it needs to stay at work, so Plaintiff left the coat at the bar. Days later, GM Pickett scolded Plaintiff for not having her Wyndham coat on as Plaintiff was walking up to the bar and demanded that Plaintiff not wear her own personal coat to work.

30. Another example includes GM Pickett limiting Plaintiff's wine pour duties, going so far as to schedule Scott for 100% of those duties. Plaintiff then complained to Wyndham HR about this, and HR told GM Pickett to split the duties down the middle between Plaintiff and Scott because Plaintiff was still a bartender.

31. Another example regarding the wine pour duties involves a situation where, when Wyndham employee Scott left Wyndham, making Plaintiff the only off-season bartender on staff, GM Pickett circumvented the rules by unilaterally changing the "Action Plan" to say that only supervisors/managers could do wine pours. Thus, Plaintiff went the entire 2018 off-season without

doing any wine pours, which significantly affected her income.

32. Then, when the new pool season opened in 2018, Wyndham GM Pickett hired two new seasonal (non-African-American) bartenders, Christian and Alicia, and had them doing the wine pours on their very first day, even though Plaintiff was available to do wine pours. This adverse treatment regarding the wine pours continued through the time of Plaintiffs' termination in July 2019.

33. Wyndham GM Pickett also told certain new-hires at Wyndham not to speak to Plaintiff at all, and refused to allow Plaintiff to train certain new-hires.

34. Wyndham GM Pickett also singled out Plaintiff in 2019 by informing a new supervisor (Christina) that Plaintiff was a problem during Christina's first few days on the job rather than letting Christina form her own impressions. Christina ended up reporting this to Plaintiff because she did not think it was ethical.

35. On or about March 2019, Wyndham GM Pickett accused Plaintiff of having an incorrect cash drawer, when in actuality, GM Pickett counted the cash drawer wrong. After Plaintiff brought GM Pickett's counting error to her attention, GM Pickett still tried to blame the error on Plaintiff. GM Pickett had to be told by upper management that GM Pickett was in fact wrong, before she finally acknowledged that Plaintiff had not committed any infractions.

36. Additionally, GM Pickett would take personal phone calls before counting Plaintiff's cash drawer (through the time Plaintiff was terminated in July 2019), which would result in Plaintiff having to wait to leave for the day – which took up time that Plaintiff did not get compensated for. Upon information and belief, no other non-African American bartender/cashier was subjected to such treatment.

37. On or about July 24, 2019, GM Pickett approached a couple who Plaintiff was serving, one of whom was African-American. During this conversation, GM Pickett asked the couple if they were staying at the hotel. When the couple indicated that they were not staying at the hotel, but that they were regulars who were visiting Plaintiff because they enjoyed her service, GM Pickett told them to leave. Prior to that point, Plaintiff had never seen GM Pickett telling paying, non-confrontational guests to leave.

38. After Plaintiff witnessed GM Pickett telling her regulars to leave, Plaintiff reported the

1  incident to Wyndham HR.

2      39.    On or about July 26, 2019, two days after Plaintiff reported the couple incident to Wyndham HR, Wyndham terminated Plaintiff, supposedly for not ringing up a beverage (which upon information and belief is not in and of itself a terminable offense even if no beverage was rung up, which Plaintiff does not concede).

3      40.    Since Plaintiff left Wyndham, she has learned that GM Pickett scheduled a bartender – rather than a supervisor or manager – to do the wine pours. Conveniently, the supervisor/manager rule for wine pours during the off-season was only in effect while Plaintiff worked at Wyndham.

4      41.    As a result of Wyndham's actions, Plaintiff has suffered and continues to suffer emotional distress, including anxiety, trauma, and depression, and she deserves to be made whole again.

5      42.    Upon information and belief, GM Pickett is close friends with the Wyndham Resort Manager Dominic, who frequently allows GM Pickett free reign over employees and company rules and fails to punish her for interacting differently with African-American employees like Plaintiff than with non-African-American employees.

## FIRST CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act – 42 U.S.C. § 2000e *et seq.* as amended– Disparate Treatment (Race Discrimination)**

43. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

44. Plaintiff is a member of a protected class as an African-American individual.

45. During her employment at Wyndham, Plaintiff performed her job duties according to Wyndham's legitimate expectations, as shown by Plaintiff's performance reviews under her first manager, Gina Territo, and her letter of recognition that she received.

46. During Plaintiff's employment at Wyndham, Wyndham (through its GM Pickett) subjected Plaintiff to adverse treatment on a regular basis, which resulted in direct harm to Plaintiff, including less tips due to the decreased bartending opportunities at the expense of more bartending hours being given to Scott and other non-minority employees.

7

47. Other non-African-American Wyndham employees with qualifications and job positions similar to Plaintiff's were treated more favorably than Plaintiff, *i.e.* being given increased bartending and wine pour opportunities and special "projects," which were not offered to Plaintiff, and not having to wait around (without being compensated) for Wyndham GM to count the cash drawer.

48. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

49. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

50. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act – 42 U.S.C. § 2000e *et seq.* as amended– Hostile Work Environment**

51. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

52. Wyndham GM Pickett's actions toward Plaintiff are not limited to an off-color remark or an isolated incident; GM Pickett repeatedly subjected Plaintiff to pervasive and severe misconduct, which sufficiently altered the terms and conditions of Plaintiff's employment, as GM Pickett's actions started soon after she was hired in June/July 2017 and lasted until Plaintiff was terminated in July 2019.

53. Moreover, Wyndham GM Pickett's hostility toward Plaintiff (which was enabled by the company) severely disrupted Plaintiff's work and her ability to do her work. For example, Wyndham GM Pickett prohibited Plaintiff from bartending or from doing wine pours and deducted attendance points when Plaintiff had spent almost an entire day at work. Further, Wyndham GM

Pickett forced Plaintiff's regulars to leave, supposedly because they were not staying at the hotel. Wyndham GM Pickett also wrongfully accused Plaintiff of having the wrong balance in her cash drawer, and claimed that Plaintiff stole cash out of the drawer, when GM Pickett was the one who counted it wrong.

54. Wyndham GM Pickett's hostility also interfered with Plaintiff's career progress, as GM Pickett failed to acknowledge Plaintiff's letter of recognition and hired new bartenders to do wine pours instead of allowing Plaintiff, who had bartending experience, to do them.

55. All of the above-mentioned actions that Wyndham took towards Plaintiff were unwelcome, as evidenced by Plaintiff repeatedly complaining to HR about it and crying in Wyndham GM Pickett's office as GM Pickett criticized her.

56. Wyndham knew or should have known about the alleged conduct and negligently allowed it to continue. Plaintiff reported Wyndham GM Pickett's illegal behavior to HR on numerous occasions, yet nothing was done in the form of any investigation.

57. Wyndham is responsible for the hostile work environment created by its general manager because it knew or should have known about the discriminatory harassment and nonetheless took no reasonable steps to cure or prevent the discrimination.

58. Therefore, Plaintiff can demonstrate that Wyndham is liable for the creation of a hostile work environment.

59. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

60. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

61. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

///

## THIRD CLAIM FOR RELIEF

**Violation of NRS 613.330 – Unlawful Deprivation of Employment (Race Discrimination)**

62. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

63. Wyndham discriminated against Plaintiff by subjecting her to, among other discriminatory acts, adverse treatment based on her race, including but not limited to GM Pickett deducting Plaintiff's attendance points, scolding Plaintiff in front of customers, and forcing Plaintiff's regulars to leave, resulting in Plaintiff receiving less tips for the day and, ultimately, humiliation.

64. Other similarly situated Wyndham employees who are not African-American were not exposed to the same discriminatory conduct, *e.g.* Scott did not get his attendance points deducted even though he would miss work when scheduled to come in.

65. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

66. As a result of Defendant's actions, it has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

**Violation of Title VII – 42 U.S.C § 2000e-3(a) – Retaliation**

67. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

68. Plaintiff engaged in a protected activity when she complained, on several occasions, to Wyndham's Human Resources Department about GM Pickett's hostile and racially discriminatory behavior towards her. Specifically, Plaintiff's most consequential protected activity involved her July 24, 2019 HR complaint regarding GM Pickett forcing Plaintiff's regular couple (where one of the individuals was African-American) to leave.

69. Upon information and belief, however, Wyndham never took up any kind of investigation into Plaintiff's complaints, and instead only offered to solve one of Plaintiff's complaints without any follow-up as to actually solving it.  Wyndham HR also failed to conduct an investigation into GM Pickett's actions toward the couple.

70. Wyndham terminated Plaintiff on July 26, 2019, just two days after the aforementioned complaint, supposedly because Plaintiff failed to ring in a beverage.

71. The temporal proximity between Plaintiff's final complaint to HR and Plaintiff's subsequent termination sufficiently shows retaliation on the part of Wyndham.

72. Wyndham HR's repeated failure to conduct investigations into Plaintiff's complaints and her termination two days after her last complaint would be reasonably likely to deter any employee from engaging in a protected activity, and therefore, was plainly retaliatory in violation of Title VII.

73. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

74. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

75. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF

**Violation of NRS 613.330 – Retaliation**

76. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

77. As detailed above, Wyndham retaliated against Plaintiff by terminating her two days after she filed a complaint with HR regarding the couple incident, pretextually claiming to Plaintiff that she was fired for failing to ring in a beverage.

78. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

79. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

80. As a result of Defendant's actions, it has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**Violation of Section 1981 – 42 U.S.C. § 1981 – Retaliation in Violation of Section 1981**

81. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

82. Defendant has violated Section 1981 by subjecting Plaintiff to retaliation for her protected complaints and opposition to Wyndham's discriminatory actions on the basis of race by, inter alia, terminating Plaintiff's employment with the Wyndham.

83. As detailed above, Wyndham retaliated against Plaintiff by terminating her two days after she filed a complaint with Wyndham HR regarding the couple incident and by pretextually alleging that Plaintiff was fired for failing to ring in a beverage.

84. Plaintiff is entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

85. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

86. As a result of Defendant's actions, it has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**

**Violation of Section 1981 – 42 U.S.C. § 1981 – Race Discrimination**

87. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

88. Defendant's discrimination against Plaintiff is in violation of the rights of Plaintiff

afforded to her by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

89. As detailed above, Wyndham GM Pickett repeatedly and intentionally subjected Plaintiff to discrimination and adverse employment actions based on and because of Plaintiff's race, which sufficiently altered the benefits, privileges, and terms and conditions of Plaintiff's employment.

90. The conduct Plaintiff was subjected to was unwelcome to Plaintiff, as Plaintiff cried when Wyndham GM Pickett berated her in her office and repeatedly filed complaints to HR regarding GM Pickett's discriminatory conduct towards her.

91. Further, Wyndham exhibited no good faith efforts to comply with the law, as seen by Wyndham HR's neglect, malice, and reckless disregard concerning Plaintiff's complaints.

92. Plaintiff is entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

93. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

94. As a result of Defendant's actions, it has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

## DEMAND FOR JURY TRIAL

95. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff invokes her right to trial by jury in this civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

1. For a judgment in favor of Plaintiff against Defendant, and each of them, on the complaint and all claims for relief asserted therein;

2. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from

1 Defendant's conduct;

2     3. For an award of compensatory damages from mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and other losses incurred by Plaintiff as a result of Defendant's conduct;

    4. For an award of prejudgment and post-judgment interest;

    5. For an award of punitive damages;

    6. For an award of Plaintiff's cost of suit incurred herein;

    7. For an award of attorney's fees and related expenses pursuant to § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k) and other corresponding federal law; and

    8. For an award of such other relief the Court may deem just and proper.

DATED this 1st day of June, 2020.

                        Respectfully submitted,

                        **MAIER GUTIERREZ & ASSOCIATES**

                        _/s/ Danielle J. Barraza_
                        JOSEPH A. GUTIERREZ, ESQ.
                        Nevada Bar No. 9046
                        DANIELLE J. BARRAZA, ESQ.
                        Nevada Bar No. 13822
                        8816 Spanish Ridge Avenue
                        Las Vegas, Nevada 89148
                        *Attorneys for Plaintiff Danielle Armstrong*